Laurel Headley (CSB 152306)
　　　Email: headley@achlaw.com
ARGUEDAS, CASSMAN & HEADLEY LLP
803 Hearst Avenue
Berkeley, CA 94710
Telephone:　(510) 845-3000
Facsimile:　(510) 845-3003

*Attorneys for Danli Liu*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,　　) | No. CR 12-00611 PJH |
| ) | |
| 　　　　　　　Plaintiff,　　) | **DEFENDANT DANLI LIU'S** |
| ) | **SENTENCING MEMORANDUM** |
| v.　　　　　　　　　　　　) | |
| ) | **Date: December 15, 2017** |
| DANLI LIU,　　　　　　　　) | **Time: 9:30 a.m.** |
| ) | **Court: Hon. Phyllis Hamilton** |
| 　　　　　　　Defendant.　　) | |
| ) | |

**TABLE OF CONTENTS**

I. INTRODUCTION……………………………………………………………………1

II. PLEA AGREEMENT AND PSR……………………………………………………2

III. OFFENSE CONDUCT……………………………………………………………..2

IV. PERSONAL BACKGROUND……………………………………………………3

V. ARGUMENT………………………………………………………………………5

    A. Ms. Liu's Substantial Assistance Warrants A Downward Departure Motion 5K1.1)……………………………………………………………………5

    B. Ms. Liu's is also deserving of a downward variance (18 U.S.C. § 3553(a))…..5

        1. Nature and Circumstances of the Offense – include relatively minor role and exit from conduct before knowledge of investigation……………..6

        2. History and Characteristics of Defendant including Abusive and Forced Economic Hardship……………………………………………………………..6

        3. Sentence disparity 3553(a)(6)…………………………………………..7

        4. Other factors that warrant variance…………………………………….9

            a. Post-offense rehabilitation………………………………..9

            b. Aberrant nature of conduct…………………………………..9

            c. The Collateral Consequences of this Case have and will continue to impact Ms. Liu…………………………………….9

            d. Extraordinary Acceptance of Responsibility and Early Restitution Payment…………………………………………10

            e. Effect of Sentence on Family if Ms. Liu is not able to care for or financially support her children……………………………11

VI. CONCLUSION……………………………………………………………………12

# TABLE OF AUTHORITIES

**Cases**

*United States v. Collins*, 684 F.3d 873 (9th Cir. 2012)……………………………………...7

*Spears v. United States*, 555 U.S. 261, 263 (2009)…………………………………………7

*United States v. Plouffe*, 436 F.3d 1062 (9th Cir. 2005)……………………………………8

*Pepper v. United States*, 131 S.Ct. 1229 (2011)……………………………………………8

*United States v. Booker*, 543 U.S. 220 (2005)………………………………………………9

*Koon v. United States*, 518 U.S. 81, 106 (1996)……………………………………………9

*United States v. Hadash,* 408 F.3d 1080 (8th Cir. 2005)…………………………………..…9

*United States v. Howe, 543 F.3d 128 (3rd Cir. 2008*………………………………………..9

*United States v. Thompson*, 315 F.3d 1071 (9th Cir. 2002)………………………………..9

*United States v. Autrey,* 555 F.3d 864, 874 (9th Cir. 2009)………………………………...9

*United States v. Smith*, 683 F.2d 1236, 1240 n. 13 (9th Cir. 1982)………………………..9

*United States v. Ressam*, 679 F3d 1069 (9th Cir. 2012)…………………………………10

*United States v. Udo*, 963 F.2d 1318 (9th Cir. 1992)………………………………………10

*United States v. Whitehead*, 532 F.3d 991 (9th Cir. 2008)…………………………...10, 11

**District Court Cases**

*U.S. v. Florida*, CR 14-582 JD……………………………………………………………... 3

*U.S. v. Galvez*, CR 13-414-PJH……………………………………………………………8

*U.S. v. Silva*, CR 14-2 PJH…………………………………………………………………8

*U.S. v. Franciose,* CR 11-426 PJH…………………………………………………………8

*U.S. v. Kahan,* CR 13-00412 PJH…………………………………………………………..8

**Statutes**
**Statutes**

**Statutes**

18 U.S.C. § 3553(a)..................................................................................*passim*

U.S.S.G. § 5K1.1....................................................................................... *passim*

U.S.S.G. § 2R1.1(b)(2)(A)...............................................................................8

## I. INTRODUCTION

On December 15, 2017, Defendant Danli Liu comes before the Court for sentencing, at which she will ask the Court to sentence her to three years of probation, 100 hours of community service, $21,888.95 restitution and a fine of $5,000.00.

A probationary sentence with community service is justified by Ms. Liu's extraordinary cooperation with the government, which we understand will result in a government recommendation of 60% off the low-end of the recommended total offense level of 13 (12 to 18 months), as well as other circumstances which serve as an independent basis for a downward variance.  18. U.S.C. §3553(a).  Ms. Liu is an immigrant who had a particularly difficult and abusive upbringing.   She is a single mother of two young children who, at 40 years old, has no criminal record aside from this case. Having little experience as a realtor and no experience buying houses at public auction, she was introduced to the big-rigging scheme by a group of individuals who had been engaged in it for a while.  In less than one year, she voluntarily and unilaterally ended her involvement, because she knew it was wrong and felt shamed by it. This was ten months before she learned about the government investigation.  She pleaded guilty in 2012, and has lived with the prospect of receiving a prison sentence for six years.  That prospect has weighed greatly on her, mostly because of her concern about her three and eight year old daughters, who have never been without her.

Probation has recommended a low-end sentence of 12 months, not taking into account Ms. Liu's cooperation.  In light of the particular circumstances of Ms. Liu's personal history, her limited role in the offense and extraordinary cooperation, we respectfully request that Ms. Liu be granted a probationary sentence with conditions that

include community service in lieu of any home monitoring, restitution, which she is prepared to pay on the day of judgment, and a $5,000.00 fine.

## II. PLEA AGREEMENT AND PSR

The plea agreement entered under 11(c)(1)(B) recommends a total offense level of 13 (12 – 18 months), a fine of between $5,000 and $50,000, and restitution of $21,888.95. It also includes a government promise to make a motion for a downward departure for Ms. Liu's cooperation under § 5K1.1. Probation recommends a low-end custodial sentence of 12 months, without taking into consideration Ms. Liu's cooperation, a $20,000 fine and restitution of $21,888.95.

There are no unresolved objections to the PSR.

## III. OFFENSE CONDUCT

Ms. Liu received her real estate license in 2007 and first attended the Alameda County foreclosure auctions in 2009. When she first attended the auction, she didn't bid on property, but watched to see how it was done. In April of 2009, went to the auction with the intent to bid on property for the first time. In the course of bidding during the public auction, she was approached by two men who said they would bid her up if she didn't pay them $20,000. She refused and continued bidding, and they continued to bid against her. After the price had been driven up, one of the men signaled for his associates to stop the bidding, and they did. Ms. Liu understood this to be a show of force designed to send her the message that she had to work with them if she wanted to buy property at auction. The next time she went to the auction intending to buy property, two of the group took her aside and convinced her to work with them and explained how the second round process worked. Ms. Liu agreed to participate in the

DEFENDANT DANLI LIU'S SENTENCING MEMORANDUM
2

second round and won the property, after which four of the round participants demanded immediate payment in cashiers check and accompanied her to her bank, where she bought cashier's checks and paid them off. In time, she was taken aside by one of the regular participants and shown in detail how the second rounds worked. Dkt. 39, ¶ 14. She continued to participate in the rounds on a sporadic basis during the next ten months, whenever she saw a piece of property that she wanted at auction. Toward the end of her involvement, she became uncomfortable with her conduct. She was pregnant with her first child, knew what she was doing was wrong and felt ashamed of herself. *U.S. v. Florida*, CR 14-582 JD, Dkt. 504, p. 827. In March of 2010, she stopped going to the auctions, not because she did not want to continue bidding on property, but because she feared confrontation with the group if she refused to participate with them.

## IV. PERSONAL BACKGROUND

Mr. Liu is 40 years old and was born in Beijing, China. When she was two years old, her father went to live in the U.S. to study and establish residency, leaving Ms. Liu and her mother behind in China. Ms. Liu lived in her maternal grandparents' home along with her mother, where they enjoyed a privileged life in a large house, with cooks, drivers and bodyguards, by virtue of her grandfather's status as a high-ranking general in the Chinese government. When Ms. Liu was twelve, her father brought her and her mother to live with him in the home he had established in Flint, Michigan. Before this move, Ms. Liu had only seen her father once in twelve years, which was during his single trip to visit in China. Dkt. 39, ¶ 41. Ms. Liu's transition from China to the U.S. was difficult. She did not speak any English, have any friends and her father,

accustomed to living alone, did not adjust well to her and her mother's presence, and her parents regularly fought.

Her father soon revealed himself to be physically abusive both toward Ms. Liu and her mother. From the ages of 12 to 18, Ms. Liu's father hit, kicked and was otherwise violent toward her on a regular basis. Once he choked her to the point where she could not breathe and thought she would die. She called the police, but when they came, she was too scared to follow through with the report. This abuse was usually prompted by her father's declaration that she was not learning fast enough. If her mother intervened, she would be beaten too. Dkt. 39, ¶ 42.

Ms. Liu was further abused by another individual between the ages of 13 and 17. The details of which are outlined in the PSR and are not repeated for privacy reasons. Dkt. 39, ¶ 43.

In an effort to instill a work ethic and teach her the value of money, Ms. Liu's parents refused to pay for her school lunch, clothes or supplies, causing her to have to get a job at 14 years old. Dkt. 39, ¶ 42. They also refused to support her in college and because her parents earned too much money, she did not qualify for financial aid and had to work multiple jobs to support herself through college. Dkt. 39, Recommendation, page 2.

After graduation in 2000, Ms. Liu came to California and worked in Silicon Valley in the electrical technology industry until she got her real estate license in 2007. Dkt. 39, ¶¶ 44, 55. She married in 2006 and had two daughters, who are now 3 and 8 years old. She and her husband separated in 2014 and they share custody, but Ms. Liu is the primary caretaker. Dkt. 39, ¶ 45.

## V. ARGUMENT

**A. Ms. Liu's Substantial Assistance Warrants A Downward Departure Motion (5K1.1)**

Ms. Liu's cooperation was substantial and the government is expected to recommend that the court depart 60% below the low-end of the guidelines. We agree that her cooperation was substantial and ask the Court to follow the government's recommendation. While the government is in the best position to evaluate the value of assistance, certain objective facts support the government's evaluation of Ms. Liu's cooperation. She entered an early plea in 2012 and soon thereafter began meeting with the government. She met with the government at least seven times, not including trial preparation. She produced documents to the government that were both hand-written and computer generated. These documents were detailed, complete, and made contemporaneous to the conduct, and referenced specific rounds and the individuals involved in them. They were introduced by the government at the trials she testified in. Ms. Liu testified in three trials and was on standby to testify at a fourth trial, but was not called. Her testimony was lengthy, consistent and truthful in each instance. It is understood that Ms. Liu is receiving the highest reduction that government has recommended in the related bid rigging cases.

**B. Ms. Liu's is also deserving of a downward variance (18 U.S.C. § 3553(a))**

Necessary to determining the sentence is consideration of "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)), which as applied to Ms. Liu's case warrant a downward variance.

### 1. Nature and Circumstances of the Offense – include relatively minor role and exit from conduct before knowledge of investigation

Ms. Liu happened upon an already established conspiracy to rig bids in April of 2009. A relatively new and inexperienced real estate agent, working for herself and self-taught on the foreclosure auction process, Ms. Liu went to the Alameda County auction with the intention of bidding in the public auction on particular pieces of property, which she had determined had income potential based on her advance research. She showed up at the courthouse steps a complete novice to the auction process, intent upon learning it by watching, and completely unaware of the existence of a second round. She was introduced to the second rounds by individuals who employed intimidating tactics to lure her in, and thereafter showed her the 'rules' of the 'private' auction. It was not until the first or second second round that she participated in that she realized they were illegal, although she readily admits that she continued to participate in them even after she knew the conduct was wrong. Ms. Liu was in no way an architect or orchestrator of the bid rigging activity, nor did she seek it out. She would have been content to have bought the property in the public auction, and likely would have done so, had the property she wanted not been usurped by the private rounds.

Ms. Liu stopped participating in the second rounds ten months before she knew about the government's investigation because she felt it was wrong. The only way she knew how to extricate herself was to stop going, thereby forfeiting buying opportunities.

### 2. History and Characteristics of Defendant including Abusive and Forced Economic Hardship

Not only did the privileged life that Ms. Liu enjoyed for her first twelve years end when she came to the U.S., she began a period of abuse that did not end until she left home for college and financial neglect that continued through her college years. Isolated by not speaking English and not having any friends or family, she was captive to a physically abusive father and a disempowered mother. The abuse at the hands of her father and others was consistent and severe. The extreme measures her parents took to instill value and work ethic -- forcing her to work for things that should have been provided -- themselves constituted neglect. The deliberate withholding of financial support continued through college.

It is not in Ms. Liu's character to dwell on her past or to use it as an excuse. In fact, the nature and extent of her abuse is only something that she has very recently spoken about to anyone. She has propelled forward in school, work and in raising her children, without reflection on her past. While this industrious character has undoubtedly contributed to her success, it may have come at an emotional cost. And it does appear that she has suffered from bouts of depression, to the extent that on one occasion she overdosed on sleeping pills and was taken to the hospital. (Dkt. 39, ¶ 49.) It is only recently, at 40 years old, that she realizes there may be other avenues for coping with past trauma and has sought the help of a counselor to work through some of the issues. Childhood abuse is endorsed as an appropriate basis for a variance and the nature and extent of Ms. Liu's abusive background supports one. *See, e.g., United States v. Collins*, 684 F.3d 873, 878, 880 n.1 (9th Cir. 2012); *cf. also Spears v. United States*, 555 U.S. 261, 263 (2009).

**3. Sentence disparity 3553(a)(6)**

The Court has made clear its inclination to give non-custodial sentences to cooperators who are first offenders willing to make restitution,[1] and has largely followed that sentencing scheme in related cases, imposing probationary sentences with home detention of lengths that take into consideration total offense level and government recommendations for departure.  In at least two cases, the Court has imposed a sentence of probation that did *not* imposed home monitoring (or any other custody alternatives), and we submit that Ms. Liu's case is similar to those. The Court sentenced Mr. Francoise[2] to three years of probation with no confinement or confinement alternative conditions.  Mr. Francoise had a guideline level two points lower than Ms. Liu because his volume of commerce fell slightly under $1,000,000, whereas Ms. Liu's falls slightly over it. (*See*, U.S.S.G. § 2R1.1(b)(2)(A)).  Neither did the Court impose home monitoring in Mr. Kahan's case,[3] where the offense level was the same as Ms. Liu's (13.)  While Mr. Kahan suffered from serious medical issues which were undoubtedly taken into consideration, Ms. Liu's status as a single mother and the primary caretaker of 3 and 8 year old children offers similarly compelling reasons justifying probation without restrictions.  Ms. Liu received a greater reduction recommendation for cooperation by the government that either Mr. Francoise or Mr. Kahan.

While unwarranted sentencing is to be avoided (18. U.S.C. § 3553(a)(6)), courts should not lose sight of the defendant as an individual. *See, United States v. Plouffe*, 436 F.3d 1062, 1063 (9th Cir. 2005).  *Pepper v. United States*, 131 S.Ct. 1229, 1239-40

---

[1] U.S. v. Galvez, CR 13-414-PJH, Dkt. 19, 25:14-25; U.S. v. Silva, CR 14-2 PJH, Dkt. 46, 15:4-14.
[2] U.S. v. Franciose, CR 11-426 PJH, Dkt. 50.
[3] U.S. v. Kahan, CR 13-00412 PJH, Dkt. 47.

(2011). We submit that Ms. Liu's particular circumstances warrant a sentence not include electronic detention.

### 4. Other factors that warrant variance

Post *United States v. Booker*, 543 U.S. 220 (2005), the guidelines are advisory and must be weighted along with other sentencing factors. *Booker*, 543 U.S. at 259. The guidelines "place essentially no limit on the number of potential factors that may warrant a departure." *Koon v. United States*, 518 U.S. 81, 106 (1996). We ask the Court to apply the following recognized factors warranting a downward variance apply to Ms. Liu.

#### a. Post-offense rehabilitation

Ms. Liu's conduct was over seven years ago, during which she has been gainfully employed. She has been on pre-trial release for six years without incident. *United States v. Hadash*, 408 F.3d 1080, 1084 (8th Cir. 2005); *See*, *United States v. Thompson*, 315 F.3d 1071, 1076 (9th Cir. 2002.)

#### b. Aberrant nature of conduct

Ms. Liu has no criminal history. She is forty years old and has been a law-abiding and productive person her entire life, as she will be in the future. Given the aberrant nature of this conduct, a variance is appropriate. *United States v. Autrey,* 555 F.3d 864, 874 (9th Cir. 2009 – court can consider defendant's lack of criminal record as a mitigating factor during sentencing); *United States v. Howe*, 543 F.3d 128 (3rd Cir. 2008); *Hadash*, 408 F.3d at 1084.

#### c. The Collateral Consequences of this Case have and will continue to impact Ms. Liu

Ms. Liu's real estate license will expire in 2018, at which time the California Department of Realtors may revoke it, based on her felony conviction. Dkt. ¶ 54. While Ms. Liu hopes to mitigate the consequences of her conviction on her license, if she loses it, she will not be able to operate her business, which is her only means of support, aside from the child support she receives from her ex-husband. Likewise, a felony conviction will undoubtedly limit other professional options. *United States v. Whitehead*, 532 F.3d 991 (9th Cir. 2008 - no abuse of discretion in district court departing downward after considering collateral consequences.) Beyond that, she will be left with the stigma of a felony conviction, which alone is a punishment for someone who has no record. *United States v. Smith*, 683 F.2d 1236, 1240 n. 13 (9th Cir. 1982.) In Ms. Liu's case, that stigma has the additional cultural weight of having brought shame on her family.

### d. Extraordinary Acceptance of Responsibility and Early Restitution Payment

Cooperation with the government can establish a basis for a variance as part of a 18 U.S.C. § 3553(a) analysis, at the same time as it forms the basis for a departure under § 5K1.1. *United States v. Ressam,* 679 F3d 1069, 1092 (9th Cir. 2012); *United States v. Udo*, 963 F.2d 1318, 1319 (9th Cir. 1992). As noted above, Ms. Liu's extraordinary level of cooperation with the government is deserving of consideration for a variance, in addition to the departure the government will recommend. As further

demonstration of her acceptance of responsibility, Ms. Liu is prepared to pay her restitution and special assessment in full on the day of sentencing.[4]

### e. Effect of Sentence on Family if Ms. Liu is not able to care for or financially support her children

Collateral effects on the family is something the Court may considering as a basis for a downward variance. *Whitehead,* 532 F.3d at 993. Unquestionably, a custodial sentence would undoubtedly disrupt her children's lives and have a financial and emotional impact on them. While she receives $3,000.00 month child support from her children's father, that amount is not enough to maintain the home and current level of support that the children rely on.

Danli made a poor decision in participating in this conduct, but she did not seek it out, organize or orchestrate it. She became caught-up in it and left voluntarily, prompted to leave by nothing more than her own moral compass. She has taken every opportunity to redeem herself, by entering an early plea, paying her restitution at the earliest possible opportunity, and cooperating with the government in every way. Her cooperation was fulsome, earning the highest recommended reduction by the government. For these reasons, together with the factors supporting a variance discussed above, we believe a probationary sentence with community service in lieu of home detention is sufficient but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

---

[4] Ms. Liu's request to deposit $21,988.95 for early payment of restitution and assessment was denied. Dkt. 37.

## VI. CONCLUSION

For the foregoing reasons, we ask the Court to sentence Ms. Liu to three years of Probation, community service, $$21,888.95 restitution and a $5,000.00 fine.

DATED: December 8, 2017                     Respectfully submitted,

                                                                       _____/s/_____
                                                                         LAUREL HEADLEY